Robert SORENSON, Plaintiff

v.

Paul MURPHY and Edward Ficco, Defendants.

Civ. A. No. 94–11777–EFH.

United States District Court, D. Massachusetts.

Jan. 25, 1995.

Robert Sorenson, pro se.

Stanley E. Adelman, Dept. of Correction, Boston, MA, for defendants.

*MEMORANDUM AND ORDER*

HARRINGTON, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss or for Summary Judgment and Defendants' Opposition to Plaintiff's Request for Preliminary Injunction.

Plaintiff is serving a life sentence for murder in the second degree at the Old Colony Correctional Center, a medium security facility of the Massachusetts Department of Corrections. On June 22, 1994 plaintiff provided a urine sample which was found to contain traces of barbiturates. Plaintiff received a disciplinary report and on June 24, 1994 was transferred to a different section of the correctional facility. Additionally, plaintiff lost his visiting privileges as of the date of transfer. On July 6, 1994 results of an outside laboratory test revealed that plaintiff's urine sample contained no barbiturates. At that time, officials dismissed the disciplinary report and restored plaintiff's visiting privileges. A few days later, plaintiff returned to his previous section.

Plaintiff instituted the instant action, which sounds in 42 U.S.C. § 1983, against the Superintendent and Deputy Superintendent of the correctional facility alleging that their actions, as outlined above, constituted violations of his Due Process and Equal Protection rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. Plaintiff seeks $500,000 in punitive and compensatory damages for the alleged violations. Additionally, plaintiff seeks a declaratory judgment and a permanent injunction regarding the alleged violations.

■ The defendants' (or their agents') actions may be broken down into two categories: (1) transfer of plaintiff within the facility and (2) denial of plaintiff's visiting privileges. We will treat each matter separately. However, at the outset, the Court rules that plaintiff has failed to set forth the necessary elements of an equal protection claim. *See Klinger v. Department of Corrections*, 31 F.3d 727, 737 (8th Cir.1994).

It is well settled that "freedom from transfer is not a liberty interest since an inmate may be transferred at the whim of the Commissioner." *Four Certain Unnamed Inmates v. Hall,* 550 F.2d 1291, 1292 (1st Cir.1977). The Massachusetts Supreme Judicial Court has ruled:

> Transfers, disciplinary or administrative, are at the discretion of the Commissioner. Since a prisoner has no right or expectation under state law that he will not be transferred except for misbehavior or the occurrence of some specified event, there is no liberty interest to which Due Process rights attach and which can be infringed by transfer.

*Nelson v. Commissioner of Corrections,* 390 Mass. 379, 397, 456 N.E.2d 1100 (1983). Accordingly, plaintiff's rights were not infringed by the temporary transfer to another section of the correctional facility. Accordingly, plaintiff's claims with respect to the transfer within the facility are hereby dismissed.

With respect to the denial of visiting privileges, the "touchstone of due process is to protect an individual from arbitrary action." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974); *See Nelson,* 390 Mass. at 392, 456 N.E.2d 1100; *Real v. Superintendent, MCI Walpole,* 390 Mass. 399, 406, 456 N.E.2d 1111 (1983). While courts permit prison administrators considerable discretion in the administration of prison facilities, limits to such discretion are established by the rules and regulations promulgated by the Department of Corrections. *Royce v. Commissioner of Corrections,* 390 Mass. 425, 427, 456 N.E.2d 1127 (1983). Once an agency promulgates regulations, it must comply with them. *Id.*

The Department of Corrections has promulgated rules and regulations for the administration of prison facilities which have been codified in the Code of Massachusetts Regulation. The purpose of Disciplinary Proceedings is to "establish rules governing the conduct of disciplinary proceedings involving inmates … in order to maintain order…." 103 CMR 430.01. After deliberation by a hearing officer and a finding of guilty by a preponderance of the evidence, the hearing officer may impose sanctions on the prisoner. 103 CMR 430.16(2). Among the sanctions which may be imposed is the loss of privileges for a specific period of time. 103 CMR 430.25(1)(b).

In the instant case, plaintiff lost his visiting privileges after a disciplinary report was issued but prior to a hearing before a disciplinary officer and a determination of guilt. Such action is in violation of the rules promulgated by the Department of Corrections. However, not every failure of a state agency to adhere to its self-imposed regulations results in a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The extent of the injury incurred must be a factor in determining whether a constitutional violation has occurred. *See Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (there is a de minimis level of imposition with which the Constitution is not concerned); *Davis v. Lane,* 814 F.2d 397, 400 (7th Cir.1987) quoting *Ware v. Reed,* 709 F.2d 345, 354 (5th Cir.1983) (some injuries are so minor that they may not constitute a violation of the Constitution but only amount to a state claim). Otherwise, any procedural irregularity committed by a state agency would automatically be transformed into a federal constitutional case and thereby render the federal courts the supervisory authority over the administration of state agencies. The Fourteenth Amendment was not framed with this purpose in mind.

The framers of the Fourteenth Amendment never contemplated that, under the guise of the grand phrases of the Due Process Clause, the federal courts would be required to police the minute and daily routine of a state correctional institution. It is not the function of the federal court to determine the hardness of prisoners' mattresses, the amount of time allotted for physical exercise, or, for that matter, the number of visitors a prisoner is permitted during a certain period of time. If there are any violations of internal prison procedures regarding these housekeeping matters, the state courts are well qualified to supervise their own correctional institutions.

It is the judgment of this Court that a convicted felon being deprived of visiting *privileges* for only *twelve days* at a correctional institution does not raise the matter to federal constitutional proportions. Let the state courts police state correctional institutions under the aegis of the state constitution for minor infractions of state procedure.

If every "de minimus" infraction of any state agency's internal procedural regulation constituted a federal constitutional case, the federal courts would be inundated. Instead of resolving disputes of a serious legal nature, they would exhaust their resources in supervising the administration of state agencies which is not their function. Accordingly, the Defendants' Motion to Dismiss or for Summary Judgment as it relates to plaintiff's claims relating to his loss of visiting privileges is allowed.

As the Court has dismissed plaintiff's Complaint, it need not reach the plaintiff's request for a preliminary injunction.

SO ORDERED.